# In the United States Court of Federal Claims

No. 17-1662C

(E-Filed: August 14, 2019)[1]

|  |  |
|---|---|
| ZEIDMAN TECHNOLOGIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Motion to Dismiss; RCFC 12(b)(1);
Motion for Judgment on the
Administrative Record; RCFC 52.1;
Motion to Supplement the
Administrative Record; Dismissal for
Lack of Jurisdiction; RCFC 12(h)(3).

Elizabeth Pipkin, San Jose, CA, for plaintiff. James Giachetti, of counsel.

Erin K. Murdock-Park, Trial Attorney, with whom were Chad A. Readler, Acting
Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Claudia Burke,
Assistant Director, Commercial Litigation Branch, Civil Division, United States
Department of Justice, Washington, DC, for defendant. Christopher S. Cole, United
States Air Force, Commercial Law & Litigation Directorate, Joint Base Andrews, MD, of
counsel.

OPINION

CAMPBELL-SMITH, Judge.

Plaintiff is a computing firm that filed the instant bid protest to challenge the
United States Air Force's decision not to award plaintiff a research and development
contract. See ECF No. 1 (complaint). Five motions are now before the court: (1)
defendant's motion to supplement the administrative record (AR) with the declarations of

---

[1]     This opinion was issued under seal on July 24, 2019. Pursuant to ¶ 7 of the
ordering language, the parties were invited to identify source selection, proprietary or
confidential material subject to deletion on the basis that the material was
protected/privileged. Defendant proposed redactions which were acceptable to the court.
Plaintiff proposed no redactions. All redactions are indicated by brackets ([ ]).

Ambros D. Montoya and David Shahady, ECF No. 21; (2) plaintiff's motion for judgment on the AR, ECF No. 44; (3) plaintiff's motion to supplement the AR with the declaration of Robert Zeidman, ECF No. 45; (4) defendant's cross-motion to strike Robert Zeidman's declaration, ECF No. 48; and (5) defendant's motion to dismiss and cross-motion for judgment on the AR, ECF No. 51.  The motions are fully briefed and ripe for a decision by the court.[2]

In ruling on these motions, the court has considered the following:  (1) plaintiff's complaint, ECF No. 1; (2) defendant's motion to supplement the AR, ECF No. 21; (3) plaintiff's response to defendant's motion to supplement the AR, ECF No. 29; (4) defendant's reply in support of its motion to supplement the AR, ECF No. 31; (5) plaintiff's motion for judgment on the AR, ECF No. 44; (6) plaintiff's motion to supplement the AR, ECF No. 45; (7) defendant's response to plaintiff's motion to supplement the AR and motion to strike Robert Zeidman's declaration, ECF No. 48; (8) plaintiff's reply in support of its motion to supplement the AR and response to defendant's motion to strike, ECF No. 50; (9) defendant's motion to dismiss, or in the alternative, cross-motion for judgment on the AR, ECF No. 51; (10) plaintiff's reply in support of its motion for judgment on the AR and response to defendant's motion to dismiss and cross-motion for judgment on the AR, ECF No. 52; (11) the corrected AR, ECF No. 66;[3] (12) plaintiff's supplemental response regarding the corrected AR, ECF No. 71; and (13) defendant's reply in support of its motion to dismiss and cross-motion for judgment on the AR, and supplemental brief regarding the corrected AR, ECF No. 72.

For the reasons set forth below, defendant's motion to supplement the AR with the declarations of Ambros D. Montoya and David Shahady is **GRANTED**; plaintiff's motion for judgment on the AR is **DENIED**; plaintiff's motion to supplement the AR with the declaration of Robert Zeidman is **DENIED**; defendant's cross-motion to strike

---

[2]     Defendant did not file a reply in support of its cross-motion to strike Mr. Zeidman's declaration, ECF No. 48.  In a joint status report, however, the parties subsequently represented to the court that "[t]he parties agree that no further briefing on the merits of the case is warranted, and that the case is ripe for the Court's adjudication." ECF No. 100 at 1.  The court, therefore, considers the matters to be fully briefed and will proceed with its decision based on the arguments that have been submitted.

[3]     When defendant filed the corrected AR, ECF No. 66, it refiled the previously filed, stamped version of the record, ECF No. 20.  As a result, the court was unable to read the file stamps on each page of the entire record and thus applied valuable judicial resources to the task of matching up record pages from the two versions to ensure that this opinion includes correct citations.  Defendant must take care to avoid creating this problem in the future—it is critical that the court's electronic record is clear.

the declaration of Robert Zeidman is **DENIED** as moot; and defendant's motion to dismiss is **GRANTED**.

I.    Background

This bid protest involves a solicitation opened pursuant to the Small Business Innovation Research (SBIR) program.  Congress established the SBIR program so that small businesses could "undertake and [] obtain the benefits of research and development in order to maintain and strengthen the competitive free enterprise system and the national economy.  15 U.S.C. § 638(a)."  ECF No. 51 at 12 (alteration in original). "Agencies are in charge of their own SBIR programs:  they are directed to unilaterally determine their research topics, receive and evaluate proposals, and make and oversee awards."  Id. at 12-13 (citing 15 U.S.C. §§ 638(f)(1); 638(g)).  SBIR awards proceed in three phases.  Phase I "involves a solicitation of contract proposals or grant applications to conduct feasibility-related experimental or theoretical R/R&D related to described agency requirements."  ECF No. 66-1 at 8.  The objective in Phase I "is to determine the scientific and technical merit and feasibility of the proposed effort and the quality of performance of the [small business concern] with a relatively small agency investment before consideration of further Federal support in Phase II."  Id.  "Several different proposed solutions to a given problem may be funded."  Id.  Plaintiff's protest challenges its exclusion from consideration during this initial phase of the SBIR award process.  See ECF No. 1.

In fiscal year 2015, the Air Force chose 153 SBIR topics to explore, including topic AF161-088 "Integrated Code Base and High Performance Embedded Computing Tool," which is at issue in this protest.  See ECF No. 66-1 at 148, 262-63.  The SBIR topics were released in December 2015, and the agency began accepting proposals in January 2016.  See id. at 114.  The solicitation closed on February 17, 2016.  See id. at 74.  The performance period for Phase I contracts was nine months in duration, and the award was not to exceed $150,000.  See id. at 137.

Ten companies, including plaintiff, submitted Phase I proposals for topic AF161-088.  See id. at 435-848.  After conducting evaluations, the Air Force assigned scores and ranks to each of the ten proposals.  The record contains a chart illustrating this information, the relevant part of which appears as follows:

| Proposal # | AF Sol Topic # | Proposal Rank | Proposal Score | Firm |
|---|---|---|---|---|
| F161-088-1594 | AF161-088 | 1 | 95 | EM Photonics, Incorporated |
| F161-088-1619 | AF161-088 | 2 | 94 | Colorado Engineering, Inc. |
| F161-088-0783 | AF161-088 | 3 | 90 | [] |
| F161-088-1218 | AF161-088 | 4 | 86 | [] |
| F161-088-1019 | AF161-088 | 5 | 81 | [] |

| F161-088-0168 | AF161-088 | 6 | 77 | [ ] |
| F161-088-1413 | AF161-088 | 7 | 60 | [ ] |
| F161-088-1073 | AF161-088 | 8 | NR | Zeidman Technologies |
| F161-088-1668 | AF161-088 | 9 | NR | [ ] |

ECF No. 66-2 at 226.[4]  The "NR" designation given to plaintiff's proposal in place of a score seems intended to indicate that the proposal was either "not relevant," or "nonresponsive."  See ECF No. 66-1 at 873 ("This proposal is considered outside the scope of the topic and thus not relevant to the topic."); see also ECF No. 72 at 20 (stating that "the Air Force found Zeidman to be technically nonresponsive to the solicitation, and gave it an 'NR' ranking").

The Air Force chose only two companies for award—EM Photonics, Inc. and Colorado Engineering, Inc.  See ECF No. 51 at 15.  "The Air Force informed all offerors of their selection or non-selection on May 16, 2016, and multiple companies requested debriefs," including plaintiff.  Id.; see also ECF No. 21-1 at 2-3.  Plaintiff's debrief states:

> This proposal is considered outside the scope of the topic and thus not relevant to the topic.  The topic is seeking a software tool or tool suite that can convert high level software languages (like C++ and Matlab) into a hardware description language, such as VHDL, to specify the hardware architecture (expression of circuit logic forming a computer architecture).  The technology proposed is for creating a Real-time Operation System which is software used to manage computer hardware and software resources, in real-time, based on input from a user.  In other words, the topic is for a tool that helps describe what the computer hardware is, while the proposed technology is for software that controls how the computer hardware operates.  These are two completely different types of technology.  As such, this proposal is not relevant to the chosen topic and thus was identified as such.

ECF No. 66-1 at 873.

Plaintiff filed a protest with the Government Accountability Office (GAO) on September 6, 2016.  See ECF No. 66-3 at 69-73.  In the letter stating the grounds for plaintiff's protest, the company's president Mr. Robert Zeidman characterizes the Air Force's statements in the debrief as "completely false," and challenges the description of

---

[4]     The tenth proposal is not reflected here because the information relating to the proposal is blacked out.  The entry, however, is accompanied by a notation that reads: "Non-compliant, no evaluation needed 4/6 Program office confirmed."  See ECF No. 66-2 at 226.

the agency's project included therein.  Id. at 69.  Mr. Zeidman claims that "[a] hardware description language (HDL) is not mentioned anywhere in the topic or in the references, which discuss software."  Id.  He also states that he is "not aware of any company that can actually meet the requirements of the project that was stated in our rejection because researchers at universities have been working on this type of solution, unsuccessfully, for many years."  Id. at 70.  Mr. Zeidman requested the identity of any awardee, and asked that plaintiff's "proposal [be] reviewed and reconsidered fairly for the topic as stated." Id.

During the course of the GAO protest, the Air Force provided plaintiff with "a more detailed explanation of why [the] proposal was rejected."  Id. at 96.  That explanation stated:

> The offeror proposes to leverage their patented SynthOS SW tool which takes SW tasks written by a developer (C-language) and generates task control and communication code (C-language), and an application specific operating system to manage execution and scheduling of tasks. The output code of the SynthOS tool is in the C programming language so the developer has visibility into everything that is going on in the OS. The resulting application specific operating system is portable to any processor that has a C-compiler.  In the technical objectives section of the proposal under the sub-section "Efficient Utilization of System Resources", the offeror says that SynthOS has been shown to efficiently utilize system resources such as RAM and FLASH memory; however, there is no mention of utilizing multiple processing cores efficiently, which is one of the main objectives of this solicitation. Furthermore, many of the architectures of interest (e.g., RADSPEED, MAESTRO [Tilera], GPU, FPGA) possess platform specific features that require special parallel constructs to effectively leverage the resources, such as using CUDA to task GPU cores.

> The intent of the solicitation was clearly stated: "This topic requests development of a tool that accepts C-language code for a suite of algorithms and outputs optimized code that can be compiled for a selected device."

> We clearly stated the devices that we were interested in in the following excerpt from the solicitation:

> "PHASE I: Identify/define hardware-aware optimization capes for likely future compute architectures (e.g., RADSPEED, MAESTRO, [Tilera], ARM, GPU, FPGA and X86 64)."

> This proposal did not show a path toward generation of code that could effectively task many of the platforms we are interested in.

> Because the proposal you submitted did not respond to all of the
> requirements of the solicitation it was not considered for award.

Id. at 99.

Plaintiff "was not satisfied with the information provided," but the Air Force was
[ ]. Id. at 74.  On September 27, 2016, the contracting officer determined that [ ]
corrective action was appropriate.  Id. at 74-75.  She stated that the "evaluation team will
reconvene and re-evaluate Zeidman's proposal and make a new determination," and that
the "final debrief will clearly explain the strengths and weaknesses for each evaluation
criteria in order to provide Zeidman Technologies with clear information regarding the
evaluation of its proposal."  Id. at 75.

The Air Force completed the re-evaluation the next month, in October 2016.  See
ECF No. 66-1 at 855.  Defendant described the re-evaluation as follows:

> Three evaluators reviewed Zeidman's proposal as if it were technically
> responsive, and gave it overall scores of 60, 69, and 66, out of a possible
> score of 100.  With respect to the most important evaluation criteria,
> soundness and technical merit, Zeidman received scores of 26, 30, and 23,
> out of a possible score of 50.  All three evaluations showed Zeidman as
> ranking last, listing it as '13/13,' rather than out of ten.

ECF No. 51 at 18 (citing ECF No. 66-1 at 855-57).[5]  The Air Force provided plaintiff
with a lengthy and detailed explanation of the re-evaluation.  See ECF No. 66-3 at 81-84.
In conclusion, the report stated:

---

[5]     The pages of the AR that memorialize the re-evaluation have been the subject of
debate between the parties.  The three pages, ECF No. 66-1 at 855-57, were blank forms
when initially filed by defendant.  See ECF No. 20-3 at 855-57.  Upon discovering the
error, defendant moved to correct the record, explaining that a technical error caused the
forms to be produced in blank, despite the fact that the completed versions were properly
part of the record.  See ECF No. 46.  Plaintiff challenged the authenticity of the
documents, accused defendant of improperly editing them, and argued that defendant
should be sanctioned, see ECF No. 47, but the court granted defendant's motion over
plaintiff's objection, see ECF No. 63 (order).  In its order granting defendant's motion,
the court noted that defendant had provided a "thorough and credible defense of its
actions," and concluded that there was "no evidence that defendant intentionally withheld
documents or improperly modified them."  Id. at 2.

> Because of . . . significant weaknesses the proposal was evaluated to have a
> score for the first criterion (soundness, technical merit, and innovation) lower
> than the other proposals for this topic area.  As this was the most important
> of the evaluation criterion, the overall score was lower than the other
> proposals, and the proposal was not recommended for award.

Id. at 84.  The record indicates that the contracting officer sent plaintiff this debrief
following the re-evaluation by email on January 13, 2017.  See ECF No. 66-3 at 85.

Plaintiff filed this protest on November 2, 2017.  See ECF No. 1.  The Air Force
ultimately chose to enter into a Phase II contract with EM Photonics, which began on
August 21, 2017, and was ongoing as of February 23, 2018, when defendant filed its
motion to dismiss, or in the alternative, cross-motion on the AR.  See ECF No. 51 at 20;
see also ECF No. 21-1 at 4.

II.     Legal Standards

A.      Supplementing the Administrative Record

As a general matter, the court will look to "the administrative record already in
existence" when analyzing motions for judgment on the AR.  Precision Standard, Inc. v.
United States, 69 Fed. Cl. 738, 745 (2006), aff'd, 228 F. App'x 980 (Fed. Cir. 2007)
(citations omitted).  Supplementing the existing record is appropriate only in "limited"
circumstances.  Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir.
2009).  Supplementation is permissible, however, when it is "required for meaningful
judicial review."  Impresa Construzioni Geom. Domenico Garufi v. United States, 238
F.3d 1324, 1338 (Fed. Cir. 2001).  For instance, "[t]he court will . . . supplement the
administrative record when the supplementary evidence presented is 'evidence without
which the court cannot fully understand the issues.'"  Precision, 69 Fed. Cl. at 745
(quoting Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States, 56
Fed. Cl. 502, 508 (2003)).

B.      Motion to Dismiss under RCFC 12(b)(1)

In the section of its motion to dismiss brought pursuant to Rule 12(b)(1) of the
Rules of the Court of Federal Claims (RCFC), defendant alleges that this court lacks
subject matter jurisdiction to consider plaintiff's case on the basis that plaintiff lacks
standing to bring it.  See ECF No. 51 at 26-31.  Plaintiff bears the burden of establishing
the court's subject matter jurisdiction by a preponderance of the evidence.  See Brandt v.
United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013).  To determine whether plaintiff has
carried this burden, the court must accept "as true all undisputed facts asserted in the
plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  Trusted

Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).

> This court has jurisdiction:
>
> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (2012).

Under this section, a plaintiff must demonstrate that it is an "interested party" in order to establish this court's jurisdiction. As the Federal Circuit has held, the "interested party" requirement in the Tucker Act "imposes more stringent standing requirements than Article III." Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest." See id. (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)).

Defendant does not dispute, and the record clearly demonstrates, that plaintiff is an actual bidder. See ECF No. 51 at 28 (defendant stating that it does "not dispute that Zeidman meets the first prong of the standing analysis, because it submitted a proposal in response to the Air Force's solicitation," and citing plaintiff's proposal, ECF No. 66-1 at 652-78). Defendant argues, however, that plaintiff does not have the requisite economic interest to satisfy the second prong of the standing analysis. See id. In order to demonstrate sufficient economic interest to support standing, plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citing Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

The substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors. See Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 62 (2014); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract."). "Demonstrating prejudice does require, however, that the plaintiff show more than a bare possibility of receiving the award." Precision Asset Mgmt. Corp. v. United States, 125 Fed. Cl. 228, 233 (2016) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005) (affirming the trial court's determination that the plaintiff had not

demonstrated a substantial chance of award when its "argument rest[ed] on mere numerical possibility, not evidence").

If the court determines that it lacks jurisdiction, it must dismiss the case.  <u>See</u> RCFC 12(h)(3).

III.     Analysis

A.     Defendant's Motion to Supplement the Administrative Record

Defendant moves to supplement the AR with two declarations for the purposes of addressing "[ ] and information related to a separate, subsequent contract award."  ECF No. 21 at 3.  As defendant explains, [ ] because:

> on [ ], the Air Force determined that [ ].  As a result, [ ].  As relevant to this protest, [ ] to Air Force personnel.

<u>Id.</u>  Defendant also argues that information related to potential future contract awards should be considered by the court with regard to plaintiff's request for prospective injunctive relief.  <u>See id.</u> at 4.  Specifically, defendant claims that "[t]o enable the Court to determine whether Zeidman is entitled to this injunctive relief on a separate contract, certain background information regarding the SBIR Phase II contract for topic AF161-088 must be included in the administrative record."  <u>Id.</u> at 5.

In response, plaintiff argues that "[t]he material that Defendant seeks to add to the record is irrelevant and improper."  ECF No. 29 at 1.  Plaintiff alleges that defendant has the authority to [ ].  <u>See id.</u> at 3.  This argument appears to be based on an assumption that the relevant contracting personnel have the power to [ ] at will.  Plaintiff claims that any information relating to Phase II contracts is irrelevant.  <u>See id.</u> at 4.  And plaintiff characterizes the "extended discussion regarding the basis upon which the Court may supplement the record," among other aspects of defendant's motion, as "unrelated to the purpose and scope" of the motion.  <u>Id.</u> at 4-5.

Defendant confirms in its reply that the relevant [ ].  ECF No. 31 at 3.

The court agrees with defendant that the supplementary declarations are necessary for meaningful judicial review.  In particular, the court will be unable to render a sound decision without understanding why [ ].  ECF No. 21 at 3.  Accordingly, defendant's motion to supplement the AR with the declarations of Ambros D. Montoya and David Shahady is granted.

B.     Defendant's Motion to Dismiss

In its motion for judgment on the AR, plaintiff argues that it has standing because it is an actual bidder, and because it asserts in its complaint that "defendant's 'procurement decision resulted in an arbitrary decision, and denied Zeidman Technologies a lucrative business opportunity.'" ECF No. 44 at 16 (citing ECF No. 1 at 1). Plaintiff also claims that it "has shown that alleged errors resulted in prejudicial harm," because "[b]ut for the government's errors in evaluating Zeidman's bid, it would have stood a substantial chance of obtaining the contract at-issue in this protest." Id.

Defendant responds, in its motion to dismiss, arguing that plaintiff lacks standing based on the following:

> Initially, Zeidman was ranked as technically non-responsive. After Zeidman protested at the GAO, the Air Force determined that, because of [ ], reevaluation was necessary. Upon reevaluation, Zeidman received technical scores of 60, 69, and 66. In contrast the awardees received scores of 95 and 94, while the other responsive offerors received scores, in decreasing order, of 90, 86, 81, 77, and 60. Based upon Zeidman's highest score of 69, it thus would have been ranked, at best, seventh.

ECF No. 51 at 28 (citations omitted). According to defendant, plaintiff cannot show that it had a substantial chance of receiving the award. Even assuming plaintiff could meet the Air Force's needs with its proposal, plaintiff "does not show that the other six offerors ranked above it lacked the ability to meet the Air Force's requirements." Id. at 30. Finally, defendant notes that even if plaintiff could show that the other offerors were technically unacceptable, the Air Force was not required to make any award at all under the solicitation. Id. at 31.

Plaintiff defends its claim to standing in a conclusory manner, arguing that "it has reasonably alleged that but-for defendant's errors, plaintiff had a substantial chance to be awarded the contract at issue." ECF No. 52 at 6. Plaintiff also maintains its challenge to the authenticity of the re-evaluation forms included in the corrected AR. Id.; see also ECF No. 47 (plaintiff's unsuccessful opposition to defendant's motion to correct the AR in which it accuses defendant of improperly editing documents and argues that defendant should be sanctioned). Plaintiff's primary complaint about the re-evaluation forms is that "[t]he purported 'technical' evaluations that defendant represents to be authentic rank Zeidman '13/13,' when in fact, only ten (10) bid[s] were submitted in response to the solicitation." ECF No. 52 at 6. Plaintiff asks: "How did defendant determine that Zeidman would rank, "at best, seventh," when that conclusion is in direct contradiction to the information contained in the technical evaluations, which on their face, are erroneous?" Id.

Plaintiff's supplemental brief expounds upon its theory that this error is evidence of irrational evaluation and unequal treatment. See ECF No. 71 at 3-5. In response,

defendant notes the court's previous ruling that there was "no evidence that defendant intentionally withheld documents or improperly modified them." ECF No. 72 at 18. Defendant argues that "Zeidman's apparent '13/13' ranking is, at most, harmless error, and is insufficient to show that Zeidman's protest has merit." ECF No. 72 at 20 (citing Day & Zimmermann Servs. v. United States, 38 Fed. Cl. 591, 597 (1997) ("[M]inor errors or irregularities, i.e., harmless errors, committed in the course of the procurement process are not sufficient grounds to warrant judicial intrusion to upset a procurement decision.")).

As an initial matter, the court agrees with defendant that plaintiff's designation as 13/13 as opposed to 10/10 on the re-evaluation forms is harmless error. The record is simply devoid of evidence that the error was anything more than a typographical one. As such, the proper frame for understanding plaintiff's rank following re-evaluation is to compare its highest score, 69, with the scores assigned to the competing proposals. A revised chart comparing scored proposals would present as follows:

| Proposal # | AF Sol Topic # | Proposal Rank | Proposal Score | Firm |
|---|---|---|---|---|
| F161-088-1594 | AF161-088 | 1 | 95 | EM Photonics, Incorporated |
| F161-088-1619 | AF161-088 | 2 | 94 | Colorado Engineering, Inc. |
| F161-088-0783 | AF161-088 | 3 | 90 | [ ] |
| F161-088-1218 | AF161-088 | 4 | 86 | [ ] |
| F161-088-1019 | AF161-088 | 5 | 81 | [ ] |
| F161-088-0168 | AF161-088 | 6 | 77 | [ ] |
| **F161-088-1073** | **AF161-088** | **7** | **69** | **Zeidman Technologies** |
| F161-088-1413 | AF161-088 | 8 | 60 | [ ] |
| F161-088-1668 | AF161-088 | 9 | NR | [ ] |

See ECF No. 66-2 at 226 (chart upon which this illustration is based).[6] Thus, in order to establish that it has the requisite economic interest to establish standing, plaintiff must demonstrate that it has a substantial chance of receiving the award but for the errors it alleges, despite the fact that its proposal was ranked below six others. Info. Tech., 316 F.3d at 1319 (citing Alfa Laval, 175 F.3d at 1367).

Throughout the briefing in this protest, plaintiff vigorously, and at length, defends its proposal and attacks the Air Force's evaluation process. In its final brief, plaintiff summarizes its allegations of error as follows:

[6]     As previously noted, only nine proposals appear in the chart as reproduced here because the tenth proposal is blacked out in the administrative record, apparently as non-compliant. See ECF No. 66-2 at 226.

11

defendant did not evaluate Zeidman's bid, Zeidman's debrief worksheets did not comply with applicable law, disparate treatment between bidders marred the procurement process, defendant's three explanations for rejection lack a rational basis, the corrective action debrief worksheet explanation is irrational and relies on unstated criteria, corrective action was a pretext to avoid an award to Zeidman, and defendant breached its implied-in-fact contract.

ECF No. 71 at 1.  In theory, such errors could cause prejudice sufficient to establish standing.  Plaintiff's case founders, however, because even assuming the Air Force committed errors in evaluating plaintiff's proposal, there is no evidence in the record that supports a conclusion that plaintiff had a substantial chance to receive an award but for those errors.  It is clear that plaintiff fervently believes that the Air Force was wrong in many of its substantive conclusions about plaintiff's proposal, and that the Air Force committed real errors in the procurement process.  But plaintiff's theory seems to amount to an assertion that had defendant not committed various errors, plaintiff's chance of receiving the award—as a matter of logic, rather than as a matter of evidence—necessarily would have improved.  This position fails to address the applicable standard.

As the court previously explained, plaintiff is not required to prove it was next in line for an award in order to establish standing.  See Sci. & Mgmt. Res., 117 Fed. Cl. at 62; see also Data Gen. Corp., 78 F.3d at 1562.  But plaintiff is required to show more than a "bare possibility" of receiving the award.  Precision, 125 Fed. Cl. at 233; see also Bannum, 404 F.3d at 1358 (affirming the trial court's determination that the plaintiff had not demonstrated a substantial chance of award when its "argument rest[ed] on mere numerical possibility, not evidence").

Here, ten companies, including plaintiff, submitted Phase I proposals for topic AF161-088, and their proposals are part of the AR.  See ECF No. 66-1 at 435-848.  Despite access to this information, plaintiff makes no significant or systematic effort to compare or distinguish its proposal from the others.  Simply put, plaintiff has failed to present an evidence-based argument that its proposal would have merited an improved rank but for the Air Force's alleged errors.  And with six proposals ranked above plaintiff's, the court cannot assume that even a generically improved score would put plaintiff in contention for award.  Plaintiff establishes, at most, the "bare possibility" of an award.  Precision, 125 Fed. Cl. at 233.  As such, the court cannot find that plaintiff has demonstrated a "substantial chance" to receive the award but for the Air Force's alleged errors.  Info. Tech., 316 F.3d at 1319 (citing Alfa Laval, 175 F.3d at 1367).

Because plaintiff has failed to demonstrate that it has standing to bring this protest, the court lacks jurisdiction to consider the merits and must dismiss the case without further analysis, pursuant to RCFC 12(h)(3).

C.    Plaintiff's Motion to Supplement the Administrative Record and
       Defendant's Cross-Motion to Strike

Plaintiff asks the court to allow it to supplement the record with the declaration of
Mr. Robert Zeidman because "[t]he solicitation at issue in this case called for technical
solutions to sophisticated engineering issues," and "the Zeidman declaration clarifies
those technical issues for the Court, so that it may conduct a meaningful review of the
evidence contained in the Administrative Record." ECF No. 45 at 1. Defendant opposes
plaintiff's motion, and makes a cross-motion to strike the declaration. See ECF No. 48.
Because the court has concluded that plaintiff does not have standing to bring this bid
protest action, the court lacks the authority to engage in a detailed analysis of the
technical aspects of this case. As such, any valid purpose that may have been served by
Mr. Zeidman's declaration is not relevant to the court's decision. Plaintiff's motion to
supplement the AR with the declaration of Robert Zeidman is denied; and defendant's
cross-motion to strike the declaration of Robert Zeidman is denied as moot.

IV.    Conclusion

Accordingly,

(1)    Defendant's motion to supplement the AR with the declarations of Ambros
       D. Montoya and David Shahady, ECF No. 21, is **GRANTED**; and, on or
       before **July 31, 2019**, defendant shall **FILE** a **notice** of filing the
       declarations of Ambros D. Montoya and David Shahady, attaching the
       declarations as presented in defendant's motion, ECF Nos. 21-1 and 21-2,
       as a separate docket entry in this matter;

(2)    Plaintiff's motion for judgment on the AR, ECF No. 44, is **DENIED**;

(3)    Plaintiff's motion to supplement the AR with the declaration of Robert
       Zeidman, ECF No. 45, is **DENIED**;

(4)    Defendant's cross-motion to strike Robert Zeidman's declaration, ECF No.
       48, is **DENIED** as moot;

(5)    Defendant's motion to dismiss or, in the alternative, cross-motion for
       judgment on the AR, ECF No. 51, is **GRANTED**;

(6)    The clerk's office is directed to **ENTER** final judgment **DISMISSING**
       plaintiff's complaint, without prejudice; and

(7)    On or before **August 7, 2019**, counsel for the parties shall **CONFER** and
       **FILE** a proposed **redacted version** of this opinion, with any material

deemed proprietary blacked out, so that a copy of the opinion can then be made available in the public record of this matter.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge